Joseph A. Nevins, J.
This is a motion pursuant to CPLR 3211 to dismiss the complaint in this action upon the grounds that it is subject to the bar of collateral estoppel and that it fails to state a cause of action.
There seems to be relatively little dispute as to the important facts which underlie the complaint, at least insofar as the parties have disclosed them. There are however some notable omissions from the factual history which render the decision more difficult. It does appear however that the plaintiff was employed by the New York Central Railroad Company as a locomotive fireman beginning in 1917 and that in 1939 he was promoted to the job of locomotive engineer, apparently in road service, which status continued until February of 1951 when he was suspended by his employer from road service and reduced to yard service, in which capacity he continued until July of 1961 when he was discharged from employment altogether. It further appears that the plaintiff was for some time prior to 1951 a member of the Grand International Brotherhood of Locomotive Engineers and of the local unit of that Brotherhood, known as Division 421, Brotherhood of Locomotive Engineers. The defendant Garvey is the chairman, commonly referred to as the general chairman of the general committee of adjustment of the Brotherhood of Locomotive Engineers employed by the New York Central Railroad Company in its Eastern District and Boston and Albany Division. The defendant Palmer is described in the complaint as the former chairman of the general committee of adjustment. It is undisputed that Division 421 of the Brotherhood and the defendants Palmer and Garvey as chairmen of the general committee of adjustment were the duly authorized representatives of the plaintiff in the processing of grievances with the New York Central Railroad Company at all levels including reference to the National Railroad Adjustment Board pursuant to the provisions of the Railway Labor Act of 1934 (U. S. Code, tit. 45, ch. 8, § 151 et seq.).
The plaintiff’s claim here revolves about the two incidents described, the first in 1951 which resulted in his demotion from road to yard service and the second in 1961, his final dismissal from service. The complaint consists of three causes of action, the first of which alleges that the defendants between 1951 and *437 1961 failed to refer the plaintiff’s grievances upon his demotion to the Railroad Adjustment Board, although the plaintiff so requested and it is charged that the defendants advised plaintiff that such claim was being properly handled and filed with the board. Neither the complaint nor the affidavit of plaintiff’s counsel specifies how or when such demands and assurances were made. The damages claimed are based upon an alleged difference in earnings between what the plaintiff would have received as a road engineman above his earnings as a yard employee. This is said to be $5,000 per year for the period of February 6,1951 through July, 1961, or $60,000 plus a continuing annual loss of $6,000.
The second cause of action alleges in substance that neither of the individual defendants during their terms of office presented any claim to the National Railroad Adjustment Board although requested to do so by various division locals within their jurisdiction and that Division 421 with knowledge, actual or constructive, of this failure permitted the individual defendants to continue in office. This acquiescence by Division 421 in the alleged dereliction of duty on the part of the individual defendants is said to have resulted in the same money damages claimed in the first cause of action. Again, neither the complaint nor the affidavit of plaintiff’s counsel contains any factual information as to when, by whom or to whom such claims for proceedings before the Adjustment Board were presented; nor any claim, let alone showing, that any such alleged grievances were worthy of reference to that body, nor that they were resolved in a manner unsatisfactory to the employees involved.
Further, there is neither claim nor showing that Division 421 was empowered to remove the individual defendants from office or that the plaintiff ever demanded that such action be taken.
The third cause of action concerns the plaintiff’s dismissal from service in July of 1961 and once again it is claimed that the defendants failed and refused to present the plaintiff’s claim to the National Railroad Adjustment Board although requested to do so by the plaintiff, resulting in a claimed loss of wages from July, 1961 to March, 1962 in the amount of $8,000. Total damages of $74,000 are claimed.
It is undisputed that, following grievance procedures processed by the general committee of adjustment and its then chairman, the defendant Garvey, the New York Central Railroad Company offered to restore the plaintiff to the position last held by him as- an engineer in yard service. This decision was accepted by the chairman of the general committee of adjustment but declined by the plaintiff. No appeal was taken by the *438 plaintiff from, this acceptance by the general committee of the offer to reinstate. However, the plaintiff’s counsel asserts that such an appeal was foreclosed by time limitations which had expired prior to the rendering of the decision upon the grievances. This is denied by the defendants and disputed by an affidavit submitted on behalf of the defendants by Thomas A. Seymour, assistant general manager of employee relations for the New York Central System, Eastern District.
The motion to dismiss, based upon application of the doctrine of collateral estoppel grows out of the fact that this plaintiff previously commenced an action in the United States District Court for the Western District of New York against the same defendants for the same relief, upon the same grounds alleged here and that the complaint was dismissed there upon the ground inter alia thatf< the complaint does not contain allegations sufficient to state a cause of action arising under and involving the interpretation and application of the Railway Labor Act as amended ”. Leaving aside the question of whether that earlier determination fits within the doctrine of collateral estoppel, rather than that of res judicata, it could only act as a bar to this action if it constituted a final adjudication on the merits. However, the District Court dismissed for lack of jurisdiction of the subject matter in the absence of a diversity of citizenship of the parties, the lack of any jurisdiction conferred pursuant to sections 1331 and 1337 of title 28 of the United States Code, and, as stated, the lack of allegations sufficient to state a cause of action arising under and involving an interpretation of a Federal statute, i.e., the Railway Labor Act. The argument of the defendants is that Federal laws control this case because it involves a collective bargaining representative, Division 421 of the Brotherhood of Locomotive Engineers, certified by the National Mediation Board, under the Railway Labor Act, as the representative of a class of employees in the service of an employer engaged in interstate commerce, and is argued, a cause of action arising out of a Federal labor statute, the Railway Labor Act. This last refers to the duty of fair representation, which the defendants claim arises from Federal law. Concluding from these propositions that Federal law applies exclusively, the defendants reason that the earlier dismissal by the District Court is a conclusive determination that no cause of action exists under Federal law and that therefore none can exist under State law.
There is ample authority that a railway union’s duty to fairly represent the class of employees for whom it is certified as the bargaining representative derives from the powers and respon *439 sibility conferred upon it by the Railway Labor Act (Railroad Trainmen v. Howard, 343 U. S. 768 [1952]; Tunstall v. Brotherhood, 323 U. S. 210 [1944]; Steele v. Louisville & Nashville R. R. Co., 323 U. S. 192 [1944]; Conley v. Gibson, 355 U. S. 41 [1957] and Graham v. Brotherhood of Firemen, 338 U. S. 232 [1949]) but it does not follow that the mere fact of such derivation will bring every action asserting a breach of that duty within the jurisdiction of a Federal District Court where diversity of citizenship does not exist. In other words, to say merely that the right asserted is derived in a general way from Federal statutes is not synonymous with the phrase “ arises under the Constitution, laws or treaties of the United States ” which is used in section 1331 of title 28 of the United States Code, nor with the language used in section 1337 of title 28 of the code referring to ‘ ‘ any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraint and monopolies (Strawser v. Reading Co., 80 F. Supp. 455 [U. S. Dist. Ct., E. D. Pa. 1948] ; Bohannon v. Reading Co., 168 F. Supp. 662 [U. S. Dist. Ct., E. D. Pa. 1958].)
Those cases, cited earlier for the proposition that the duty of railway unions to fairly represent all employees derives from the Bailway Labor Act, are not to the contrary since in each of them the certified bargaining representative was charged either expressly or by necessary implication with active and hostile discrimination against Negro employees either in bargaining on their behalf as in Steele, Tunstall, Graham and Howard or in processing their grievances as in Conley. Of course the judically enforcible duty of fair representation originally enunciated in cases involving racial discrimination has been extended to such situations where unlawful discrimination is alleged to have been practiced on other than racial grounds. (Ford Motor Co. v. Huffman, 345 U. S. 330 [1953] ; Thompson v. Brotherhood of Sleeping Car Porters, 316 F. 2d 191 [C. A. 4th, 1963]; Ferro v. Railway Express Agency, 296 F. 2d 847 [C. A. 2d, 1961]; Latham v. Baltimore & Ohio R. R. Co., 274 F. 2d 507 [C. A. 2d, 1960]; Mount v. Grand Inti. Brotherhood of Locomotive Engrs., 226 F. 2d 604 [C. A. 6th, 1955].) But these decisions involved either proof or at least allegations of willful and invidious discrimination by the bargaining representative against a member or class of members of the bargaining unit. It seems then that the dismissal of the prior action by the District Court may quite well have been predicated upon the fact that the complaint there (which is practically identical with that here) failed to allege bad faith or an *440 active and hostile discrimination against the plaintiff by the individual defendants and Division 421, so that Federal jurisdiction of the subject matter was not invoked in the absence of a diversity of citizenship between the parties which concededly did not exist. That being so, the dismissal there would not be an adjudication upon the merits (Fed. Rules Civ. Pro., rule 41, subd. [b]; Hughes v. United States, 4 Wall. [71 U. S.] 232) but only one made upon the face of the complaint reflecting the absence of essential jurisdictional allegations. I reach this conclusion aware of the fact that other Federal court decisions may appear to be at variance with the determination made by the District Court in this case. (See Conley v, Gibson, 355 U. S. 41, supra, and Thompson v. Brotherhood of Sleeping Car Porters, supra.) But as indicated above, these decisions may be validly distinguished.
The second branch of the motion against the complaint is to dismiss for a failure to state a cause of action upon the ground that the complaint fails to allege bad faith or hostile discrimination on the part of the defendants and that the plaintiff has failed to exhaust his remedies under the constitution of the Brotherhood of Locomotive Engineers. In deciding whether this complaint states a cause of action this court is constrained to apply Federal law, as contended for by the defendants, upon the basis that the right asserted is a Federal one and is governed therefore by Federal law. (Steele v. Louisville & Nashville R. R. Co., 323 U. S. 192, supra.)
There is no allegation, it is true, that the defendants singled out this plaintiff for treatment invidiously different from that extended to other members of the brotherhood, nor is it alleged that the plaintiff was a member of a class of employees against whom the defendants illegally discriminated. In fact the second cause of action alleges that the individual defendants have never presented a claim to the National Bailroad Adjustment Board on behalf of any employees although it is alleged that they were asked to do so. Beduced to simplicity, the plaintiff alleges a complete failure of the defendants to act upon any grievance so far as the National Bailroad Adjustment Board is concerned rather than an arbitrary refusal to process those lodged by him. From this alleged failure comes the conclusion of improper performance of the duty to fairly represent, but nowhere is it alleged that the plaintiff’s grievance was one which should have been carried to the highest possible level of labor-management consultation, much less that any such referral would have resulted in an improvement over the dispositions made at lower steps of grievance resolution, and, concededly, the defendants *441 did process the plaintiff’s grievance at these levels. Obviously, the bargaining representative is not required to carry every grievance to the highest level, but must be permitted to assess each with a view to its individual merit and its consistency with prior and pending grievance proceedings. As the United States Supreme Court said in a somewhat different context in Ford Motor Co. v. Huffman (345 U. S. 330, 338, supra): “ A wide range of reasonableness must he allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.’’ Again, speaking with reference to a union’s duty to fairly represent its members, the court said recently: “ Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must he free to take a position on the not so frivolous disputes.” (Humphrey v. Moore, 375 U. S. 335, 349.) It is true that refusal by a union to process a grievance, if coupled with bad faith, arbitrariness or discrimination based upon irrelevant factors would constitute a breach of its duty to fairly represent all employees in the bargaining unit (Thompson v. Brotherhood of Sleeping Car Porters, 316 F. 2d 847, supra), hut that is a long way from holding that a cause of action is stated when all that is alleged is a dropping of the grievance by the union at some step in the procedure short of reference to the highest possible level of adjustment provided for by the collective bargaining agreement, or as in this case, by statute.
It may also be that the formulation of the union’s duty to its members in terms of fair representation subject to good faith and without discrimination is not completely adequate (see Wellington, Union Democrary and Fair Representation; Federal Responsibility in a Federal System, 67 Yale L. J. 1327 [1958]; Cox, Rights Under a Labor Agreement, 69 Harv. L. Rev. 601 [1955]), but it appears to be for the present the applicable yardstick against which to measure this complaint.
It should he noted that no question is raised here as to the right of the defendants to represent the plaintiff in grievance proceedings not only as a matter of Federal law but by virtue of the constitution and by-laws of the Brotherhood of Locomotive Engineers which grants to the defendants, ‘ ‘ full and complete authority to present and handle each and every member’s claims, complaints and grievances against the railroad on which he is employed. Said power and authority shall include the handling of such claims, complaints and grievances, before any and all officials of the railroad, and shall include the right to collect, settle, compromise, amend, withdraw, dismiss, or in *442 any other manner dispose of, such claims, complaints, and grievances, and shall also include the power and authority to submit such claims, complaints, and grievances, for determination to any person, court, or board or other tribunal provided by law or otherwise as may be deemed necessary or advisable by such authorized representative.” (Standing Rules, § 44, par. c, pp. 180-182 [1962 Const.].) This provision, it is alleged by defendants, and not denied by the plaintiff, was in full force and effect at all of the times mentioned in the plaintiff’s complaint.
However, this broad grant of power should be read as subject to the qualification that it too be exercised with an even hand and in good faith so that generally speaking the defendants’ statutory duty to fairly represent the plaintiff is not diminished by the grant.
Despite the fact that the defendants have submitted several affidavits negating important allegations made in the complaint, no answering affidavit from the plaintiff has been furnished indicating that the challenged allegations have any substance. Lacking also is a showing, however slight, by the plaintiff that his demotion and dismissal were wrongful although that would seem to be the essential to his claim. iSince this is the second time this complaint has come under attack as insufficient because of the lack of allegations of bad faith or hostile discrimination on the part of the defendants, it seems reasonable to assume that omission is not inadvertent. In view of these omissions and in the absence of any request for leave to plead again (CPLR 3211, subd. [e]) the complaint should be dismissed without such leave upon the ground that it fails to state a cause of action. This disposition obviates any necessity to pass upon the question of whether the plaintiff did or did not exhaust his remedies under the constitution of the Brotherhood of Locomotive Engineers.