**CITY OF LENNOX, a municipal corporation, Plaintiff and Appellant,**

**v.**

**MITEK INDUSTRIES, INC., a foreign corporation, d/b/a Hydro–Air; Harvest States Cooperatives, d/b/a Great Plains Supply, Defendants and Appellees,**

**and**

**Tony Snyders, d/b/a Breuer and Snyders Construction, Defendant.**

**No. 18440.**

Supreme Court of South Dakota.

Considered on Briefs on April 27, 1994.

Decided July 13, 1994.

David M. Buechler, Parker, for appellant City of Lennox.

Barbara Anderson Lewis of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellee Mitek Industries.

Harold C. Doyle and Terry G. Westergaard of May, Johnson, Doyle and Becker Sioux Falls, for appellee Great Plains Supply.

TIMM, Circuit Judge.

City of Lennox appeals the circuit court's granting of summary judgment on its negligence and implied warranty claims. We affirm.

### FACTS

In 1982 the City of Lennox (City) was interested in constructing a public works building for its maintenance vehicles. Breuer and Snyders Construction (Breuer and Snyders) was awarded the bid on the construction project on September 27, 1982. Breuer and Snyders contracted with Harvest States Cooperatives, d/b/a Great Plains Supply (GPS), for the purchase of materials they used to construct the building. The materials included trusses which were delivered to the job site sometime between September 29 and November 1, 1982. The building plans and specifications were prepared by GPS.

Mitek Industries, Inc., d/b/a Hydro–Air (Mitek), provided design specifications and component parts for the trusses to GPS. GPS then constructed or manufactured the trusses. On or about June 1992, one of the employees for the city noticed a failed truss on the east end of the building. A closer examination revealed that all of the trusses had failed. The City subsequently brought suit against GPS and Mitek based upon the theories of breach of implied warranties and negligence and against Breuer and Snyders based upon breach of contract. Part of the damages claimed were the expenses involved in removing old insulation, sheet metal, and having to disconnect heating, plumbing, and electrical connections before replacing the trusses.

Summary judgment was granted for Mitek and GPS because the circuit court found that the action was governed under the provisions of the Uniform Commercial Code and therefore beyond the statute of limitations found

at SDCL 57A–2–725. City appeals that decision.

## ISSUE

DOES THE STATUTE OF LIMITATIONS IN UNIFORM COMMERCIAL CODE (SDCL 57A–2–725) GOVERN THE TRANSACTION AND, IF SO, ARE ECONOMIC DAMAGES STILL RECOVERABLE UNDER NEGLIGENCE THEORIES?

## STANDARD OF REVIEW

■ Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Breen v. Dakota Gear & Joint Co., Inc.,* 433 N.W.2d 221, 223 (S.D. 1988). The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. *Du–Al Mfg. Co., v. Sioux Falls Const. Co.,* 487 N.W.2d 29, 31 (S.D. 1992). The non-moving party, however, must present specific facts that demonstrate a genuine, material issue for trial. *Id.* When no genuine issue of material fact exists, summary judgment is looked upon with favor. *Id.*

## DECISION

■ The first question to be addressed is whether the transaction is a sales transaction which brings it within the scope of the Uniform Commercial Code. In order for the UCC to govern the transaction, the sale must be for a sale of goods. SDCL 57A–2–106(1) states in pertinent part:

> In this chapter unless the context otherwise requires 'contract' and 'agreement' *are limited to those relating to the present or future sale of goods.* 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time. [emphasis added].

Goods are defined as all things which are movable at the time of identification to the contract for sale. SDCL 57A–2–105(1). The trusses which were involved in this transaction were movable and thus fall within the definition of goods under the UCC.

■ When goods and services are sold together, however, as is the case with GPS and Mitek, a special inquiry must be made. *Jandreau v. Sheesley,* 324 N.W.2d 266 (S.D. 1982). The test is what is the predominate purpose of the contract. *Id.* Is it for the rendition of a service with goods incidentally involved or is it a transaction of sale with labor incidentally involved? *Id.*

■ In *TCF Bank & Savings v. Marshall Truss Systems, Inc.,* 466 N.W.2d 49 (Minn. App.1991), the court held that a contract between a subcontractor and a general contractor to manufacture and assemble wooden trusses and deliver them to the building site for installation was predominately a contract for sale of goods. Similar to the subcontractor in *TCF Bank,* GPS manufactured the trusses and provided them at the site of construction and therefore this Court finds the contract to be predominately for the sale of goods.

■ Mitek provided a component part to the trusses along with design services. Although the record is unclear as to the exact nature of the design services provided by Mitek, it appears that the contract between GPS and Mitek was primarily for the truss plates. The transaction in all likelihood would not have taken place but for the necessary addition of the component part to the trusses. This also is predominately a contract for the sale of goods and therefore governed by the UCC.

■ The statute of limitations for transactions covered in the Uniform Commercial Code is found in SDCL 57A–2–725. This statute provides:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly

extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. (emphasis added).

Tender of delivery was made sometime between September 29, 1982 and November 1, 1982. This action was not commenced until 1992, well after the limitations period had run. Therefore, the circuit court was correct in granting summary judgment on the implied warranty claims which are clearly governed by the UCC.

■■■ Because the UCC governs, the next inquiry is whether the losses claimed under the negligence causes of action are recoverable in tort or whether the UCC provisions are exclusive. The general rule is that economic losses are not recoverable under tort theories; rather, they are limited to the commercial theories found in the UCC. *Agristor Leasing v. Spindler*, 656 F.Supp. 653 (D.S.D. 1987). This Court has never directly addressed this issue. In *Agristor* the court addressed that fact and stated that "[t]he South Dakota Supreme Court has not directly decided the issue. Indications are, however, that South Dakota will adopt the approach of the California Supreme Court [citation omitted]. Recovery of economic losses is limited to the remedies of the Uniform Commercial Code." *Agristor*, 656 F.Supp. at 655.

The rationale behind the rule was explained in *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn.1990), where the court stated:

[T]he Code not merely permits but also encourages negotiated agreements concerning all aspects of a commercial transaction including warranties, warranty disclaimers, and liability limitations. The foundational assumption of the Code as a whole is that by importing to their negotiations their experience in the marketplace, the reasonable contemplation of sophisticated parties is embodied in the transaction. It is at the time of the contract formation that experienced parties define the product, identify the risks, and negotiate a price of the goods that reflects the relative benefits and risks to each.

This Court is in agreement with the rationale behind the rule denying economic damages under tort theories and expressly recognizes it.

■■■ City concedes that economic losses arising out of commercial transactions are not recoverable under the tort theory of negligence. City contends, however, that when the damage is to "other property," one of the two exceptions to the general rule applies. One exception is when personal injury is involved. *Hapka*, 458 N.W.2d at 687. The second exception exists when the damage is to "other property" as opposed to the specific goods that were part of the transaction.

■■■ Other property has been defined as damage to property collateral to the product itself. *Agristor*, at 657.

Economic loss, on the other hand, is more specific. It is defined as that loss resulting from the failure of the product to perform to the level expected by the buyer and *the consequential losses* resulting from the buyer's inability to make use of the ineffective product, such as lost profits. (emphasis added).

*Id.* Examples of damage to other property include: 1) defective heater that exploded and destroyed a major portion of a refinery;[1] 2) defective brakes that hypothetically caused truck to run into home.[2] When a defect in a component part damages the product into which that component was incorporated, economic losses to the product as a whole are not losses to "other property" and are therefore not recoverable in tort. *Minneapolis Soc. of Fine Arts v. Parker–Klein*, 354 N.W.2d 816, 820 (Minn.1984) (reversed on other grounds). The defective trusses forced the City to remove insulation, sheet metal, etc., which all were part of the whole product that the defective component part damaged, in order to replace the trusses. The damages the City is claiming are in reality repair costs that fall under conse-

---

1. *Signal Oil and Gas Co. v. Universal Oil Products*, 572 S.W.2d 320 (Tex.1978).

2. *American Home Assurance Co. v. Major Tool and Machine, Inc.*, 767 F.2d 446 (8th Cir.1985).

**334**

quential damages. Therefore, the economic damages are not recoverable under the tort theory of negligence and instead are governed by the UCC. Summary judgment is also affirmed on the negligence causes of action.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.

TIMM, Circuit Judge, for AMUNDSON, J., disqualified.